# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| JOANNA MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Docket No. 2:17-cv-489-NT |
| ) | |
| GRANITE BAY CARE, INC., ) | |
| ) | |
| Defendant. ) | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS COUNTS II AND III**

In this employment action, Plaintiff Joanna Moore asserts three claims against Defendant Granite Bay Care, Inc. (**"Granite Bay"**). Count I of Ms. Moore's First Amended Complaint (**"FAC"**) alleges that Granite Bay retaliated against Ms. Moore for reporting poor conditions in one of Granite Bay's facilities, in violation of the Maine Whistleblower Protection Act (**"MWPA"**) and the Maine Human Rights Act (**"MHRA"**). FAC ¶¶ 66-79 (ECF No. 1-3). Counts II and III allege, respectively, that Granite Bay subjected Ms. Moore to impermissible disparate treatment because of her age and to a hostile work environment, both in violation of the MHRA. FAC ¶¶ 1, 80-95. Before me is Granite Bay's motion under Federal Rule of Procedure 12(b)(6) to dismiss Count II outright and to dismiss Count III to the extent it asserts an age-based hostile work environment claim. (ECF No. 7.) For the reasons that follow, I **DENY** the motion to dismiss.

## FACTUAL BACKGROUND[1]

Ms. Moore is a 58-year-old Maine resident. FAC ¶¶ 2, 13. Granite Bay is a New Hampshire corporation that operates residential treatment centers in Maine. FAC ¶ 4; *see* FAC ¶¶ 15, 16. Beginning in February 2014, Granite Bay employed Ms. Moore as a Direct Support Professional and Certified Residential Medication Aide. FAC ¶ 14. In that role, Ms. Moore worked with developmentally disabled adults in a facility located at 23 Cape Road in Raymond, Maine. FAC ¶¶ 15-16.

Danielle Holmes supervised Ms. Moore at the Cape Road home. FAC ¶ 17. In the fall of 2014, Ms. Holmes began to harass Ms. Moore. FAC ¶¶ 19, 20, 22-27. Ms. Holmes openly directed animosity towards the older employees at the home and specifically told Ms. Moore's colleagues that she hoped to replace the older staff, including Ms. Moore, with younger workers. FAC ¶ 19. By the end of Ms. Moore's tenure at Granite Bay, all of the older staff had been terminated and supplanted by younger hires. FAC ¶ 88.

On December 3, 2014, Ms. Moore arrived for her shift to find that a resident had been neglected for an entire day. FAC ¶ 28. She had not been given food, and, as she had not left her bed, she was soaked in her own urine. FAC ¶ 28. Ms. Moore

---

[1] The facts below are drawn from the allegations in the First Amended Complaint ("**FAC**"), which I take as true for the purposes of deciding the motions to dismiss, and from official administrative records supplied by the parties without objection. *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) ("In ruling on a motion to dismiss, . . . [o]rdinarily, a court may not consider any documents that are outside of the complaint. . . . There is, however a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to the plaintiffs' claim; or for documents sufficiently referred to in the complaint'." (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

reported these conditions to the Maine Department of Health and Human Services ("**DHHS**"). FAC ¶ 30.

After the report of neglect, Ms. Holmes redoubled her harassment of Ms. Moore, making threatening comments toward Ms. Moore in front of her co-workers, reducing her hours, refusing to allow her to take breaks, and giving her excessive lists of tasks. FAC ¶¶ 40-41, 45-49, 51-54. Things came to a head on January 30, 2015, when Ms. Holmes falsely reported to Granite Bay's human resources department that Ms. Moore had refused to assist other staff in restraining a client and that Ms. Moore had brought a can of bear spray to the home to use on patients. FAC ¶¶ 57-61. Although Ms. Moore vigorously denied these allegations, Granite Bay eliminated her hours and, on February 6, 2015, formally terminated her employment. FAC ¶¶ 62-64.

On April 23, 2015, Ms. Moore filed a Complaint of Discrimination with the Maine Human Rights Commission ("**MHRC**") (the "**Charge**"). (ECF No. 7-1). The complaint form used by the MHRC provides space for employees to describe the particulars of their charge, into which Ms. Moore entered the following information:

> I believe I have been unlawfully discriminated against in employment because I engaged in activity protected under Title 26. I believe this to be in violation of rights accorded me by the Maine Human Rights Act, the Whistleblowers' Protection Act, as well as state employment regulations, in that:
> . . .
> b) On December 3, 2014, I found that a client had been in a soaked bed and her clothing wet with urine while two staff people had been there with her all morning. The client had not eaten, her clothes had not been changed and the bed had not been cleaned. Therefore, I reported this situation to DHHS.
> . . .

3

d) After this, Housing Manager Danielle Holmes cut my hours down to 30 and then harassed me physically, verbally and by showing me a hateful video. I tried to bring this retaliatory treatment to the attention of management, but was told they heard I "was afraid" of the clients and, for the client's safety, they would move some of the employees.
. . .
f) On February 6, 2015, I received a note from the H.R. Dept. indicating that for the safety of the staff and the client, I was being terminated. I let them know a staff person said the current house manager was wanting "to get rid of the older people on the weekend staff," which included me. I was then called to the office, where the employer claimed I was afraid of the client and unwilling to do restraints, which was not at all true.
g) I believe the reasons given by the employer for my termination are a pretext. I believe the real reasons for my termination are retaliation after reporting unsafe and/or illegal activity in the workplace and because I reported the activity to an outside agency after no appropriate action was taken by the employer to rectify the situation.

Charge at 2. The complaint form also includes a series of check-boxes through which employees may indicate the basis for their discrimination charge—for example, "race," "age," and "sex." Charge at 1. Ms. Moore ticked only the box labelled "Whistleblowers' Protection Act" and not the box labelled "age." Charge at 1.

An investigator for the MHRC conducted a preliminary investigation into Ms. Moore's Charge that included reviewing responsive materials submitted by Granite Bay and a rebuttal by Ms. Moore. Def.'s Ex. 2 at 1 (ECF No. 7-2). The investigator then prepared a report of his findings, in which he noted that Ms. Moore had

> stated that a coworker told her that management stated that the manager was going to replace older weekend staff members, which would have included Complainant. Complainant did not make a claim of age discrimination, nor does the record support one, given that there is no evidence in the record other than this single third-hand comment which Complainant did not report to anyone until after management raised concerns about her performance.

4

Def.'s Ex. 2 at 1 n.1 (ECF No. 7-2). The MHRC dismissed Ms. Moore's Charge on June 21, 2017. Pl.'s Ex. 2 at 31 (ECF No. 10-2). Ms. Moore filed her initial complaint in this action in Cumberland County Superior Court on September 15, 2017, which she subsequently amended to add a hostile work environment claim. Compl. (ECF No. 1-1); FAC ¶¶ 11, 90-95. Ms. Moore's Complaint and FAC alleged facts similar to those asserted in the Charge, but included additional allegations that her supervisor had reduced her hours and harassed her because of her age and that Granite Bay had replaced the older employees at the Cape Road home with younger workers. On December 18, 2017, Granite Bay removed the action to this court. (ECF No. 1.)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal if that party believes that the pleading fails "to state a claim upon which relief can be granted." In assessing a motion to dismiss under Rule 12(b)(6), a court "assume[s] the truth of all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." *Román–Oliveras v. P.R. Elec. Power Auth.*, 655 F.3d 43, 45 (1st Cir. 2011) (quotations omitted). To overcome a motion to dismiss, a plaintiff must establish that their allegations raise a plausible basis for a fact finder to conclude that the defendant is legally responsible for the claims at issue. *Id.* at 49.

**DISCUSSION**

Granite Bay moves to dismiss Counts II and III of the FAC on the grounds that Ms. Moore did not raise age discrimination or age-related harassment in her

5

administrative charge and that her failure to do so renders her age-related claims time-barred.

I. **Maine Human Rights Act Limitations Period and the Scope of Administrative Charges Submitted to the Maine Human Rights Commission**

The MHRA sets a two-year limitations period for discrimination claims, running from the date of the act of unlawful discrimination. 5 M.R.S. § 4613(2)(c). Employees may extend this period by filing an administrative charge with the MHRC within 300 days of the allegedly discriminatory act. 5 M.R.S. § 4611. An employee who elects to file an administrative charge may bring her claims in court up to 90 days after certain triggering events, including the MHRC's dismissal of their case. 5 M.R.S. § 4613(2)(c), 4622(1).

Granite Bay asserts that because Ms. Moore's Charge did not set out a claim for age-based discriminatory treatment, her age-based claims are not entitled to the benefit of the extended limitations period.[2] Because Ms. Moore filed her Complaint

---

[2] The parties cite no case in which a Maine court has discussed how the scope of an administrative charge affects the timeliness of a subsequently-filed complaint. And, as this court has repeatedly recognized, "[t]he Maine Law Court has never read an exhaustion provision into the MHRA." *Flood v. Bank of Am. Corp.*, No. 12-105-GZS, 2012 WL 6111451, at *2 (D. Me. Dec. 10, 2012); *accord Burnett v. Ocean Props. Ltd.*, No. 2:16-CV-00359-JAW, 2017 WL 1331134, at *9 (D. Me. Apr. 11, 2017); *Depaolo v. Ocean Props. Ltd.*, No. 2:16-CV-468-NT, 2017 WL 432680, at *3 (D. Me. Jan. 31, 2017).
    In suits brought under Title VII of the Civil Rights Act of 1964, employees cannot bring a civil action for employment discrimination unless they have exhausted available remedies before an appropriate administrative agency. *Rodriguez v. United States*, 852 F.3d 67, 78 (1st Cir. 2017). As a corollary to this, the scope of a subsequent civil action is limited by the allegations in the administrative charge. *Id.* at 79. It is unclear whether Maine's courts would apply federal administrative exhaustion principals to this type of case. *Cf. Frost v. State Dep't of Transp.*, No. CIV.A. CV-02-237, 2005 WL 3340215, at *7 (Me. Super. Oct. 7, 2005) (looking to federal administrative exhaustion law to determine whether employee could pursue compensatory damages for discrimination claim, a remedy only allowed under MHRA when employee has filed administrative charge). But because the parties assume that analogous Title VII precedent provides the appropriate analytical framework to evaluate Ms. Moore's administrative charge, I follow suit.

more than two and a half years after her termination, Granite Bay argues, those claims are time-barred.[3]

As the First Circuit has explained in the analogous context of Title VII, the purpose of an administrative charge is "to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation." *Lattimore v. Polaroid Corp.,* 99 F.3d 456, 464 (1st Cir. 1996). The administrative charge's allegations therefore cabin the scope of any subsequent complaint. *Rodriguez v. United States*, 852 F.3d 67, 79 (1st Cir. 2017). This does not mean, however, that employees must lay out all of their potential claims with "literary exactitude." *Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 32 (1st Cir. 2009) (quoting *Davis v. Lucent Techs., Inc.*, 251 F.3d 227, 233 (1st Cir. 2001)). Particularly "where, as here, an employee acts *pro se,* the administrative charge is liberally construed in order to afford the complainant the benefit of any reasonable doubt." *See Lattimore,* 99 F.3d at 464. And beyond giving a liberal reading to the administrative charge's plain terms, courts will construe the charge to encompass claims that "come within the 'scope of the [] investigation which can reasonably be expected to grow out of the charge.' " *Fantini v. Salem State Coll.*, 557 F.3d 22, 27 (1st Cir. 2009); *see also Frost v. State Dep't of Transp.*, No. CIV.A. CV-02-237, 2005 WL 3340215, at *7 (Me. Super. Oct. 7, 2005) (adopting Title VII scope of the investigation rule to assess whether a claim fell within the scope of an MHRC charge for purposes of determining available remedies).

---

[3] The parties do not dispute that Ms. Moore timely filed an administrative charge or that she submitted her initial complaint within 90 days after the MHRC dismissed her case.

This "scope of the investigation" rule does not "provide[] a plaintiff with an unlimited license to extend his claim endlessly beyond the bounds and parameters encompassed by the administrative charge." *Thornton*, 587 F.3d at 32; *see also Lattimore*, 99 F.3d at 465. ("Although an investigation is not strictly confined to allegations in the charge, it is not a 'fishing expedition' that should be expected to extend to matters unrelated to the charge."). "For a claim to fall within the scope of the investigation, the plaintiff must 'describe the essential nature of the claim and . . . identify the core facts on which it rests.'" *Swallow v. Fetzer Vineyards*, 46 F. App'x 636, 645 (1st Cir. 2002) (quoting *Lattimore*, 99 F.3d at 464). A plaintiff may not "file general charges . . . and then expect that this allegation will permit all claims of" discrimination based on the same protected status "in a subsequent law suit." *Lattimore,* 99 F.3d at 464 (quoting *Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 673 (8th Cir. 1994)). Nor may the plaintiff "make a specific claim based on one set of facts and, later, assert an entirely different claim based on a different and unrelated set of facts." *Id.*

*Fantini v. Salem State College* is instructive. In that case, the plaintiff's charge asserted that she had been disciplined for conduct that had no repercussions for a male coworker who was similarly situated to her. In an addendum to her charge, she noted that the male employee had made "major errors and omissions" but was given "much more freedom to act to correct them than I had." 557 F.3d at 27. The addendum also stated that the plaintiff's termination was pretext for gender discrimination. *Id.* On these facts, the district court found that because the plaintiff had only "made one

8

passing mention of gender discrimination," she had not exhausted her administrative remedies as to her subsequent gender-based disparate treatment claim. The First Circuit rejected the district court's non-exhaustion finding, emphasizing that the plaintiff had "specifically described an alleged incident of disparate treatment involving her and [a] male employee . . . as well as specifically stated that she believed her termination, while she was on sick leave, was a pretext for gender discrimination." *Id.* at 26, 28. *Fantini* underscores that courts must focus on the factual allegations in employees' administrative filings, not on the legal terms they use to label those facts.

## II. Application to Ms. Moore's Claims

The question before me is whether Ms. Moore's allegations could reasonably be expected to lead to an inquiry that encompassed her age-based claims. In making this assessment, I look to the Charge itself and to Ms. Moore's rebuttal to Granite Bay's response to the Charge.[4]

---

[4] Neither party offers any authority to address whether I may consider administrative materials outside of Ms. Moore's Charge when evaluating the Charge's scope. My own review of the caselaw reveals that courts in this circuit take into account such submissions when the respondent received and had an opportunity to respond to them, a position that aligns with the administrative charge's notice function. *Compare Swallow v. Fetzer Vineyards*, 46 F. App'x 636, 645 (1st Cir. 2002) (looking to the plaintiff's rebuttal to defendant's administrative submission as evidence of whether she intended to assert a claim in her administrative charge); *Furtado v. Standard Parking Corp.*, 820 F. Supp. 2d 261, 275 (D. Mass. 2011) (same); *and Ianetta v. Putnam Invs., Inc.*, 142 F. Supp. 2d 131, 135 (D. Mass. 2001) (same) *with Kenney v. MML Inv'rs Servs., Inc.*, 266 F. Supp. 2d 239, 247 (D. Mass. 2003) (declining to consider additional materials where "Defendant was not privy to the documents . . . and, thus, did not have an opportunity to respond to them"). I find it appropriate to consider Ms. Moore's rebuttal here, where Granite Bay received a copy of the rebuttal before the investigator began assessing her case and was given an opportunity to respond to the rebuttal. Pl.'s Ex. 2 at 10-11 (ECF No. 10-2).

I find that Ms. Moore's administrative submissions should reasonably have given rise to an investigation that included age discrimination claims. Undeniably, the Charge focuses on whistleblower retaliation.[5] However, Ms. Moore's allegation that "a staff person said the current house manager was wanting 'to get rid of the older people on the weekend staff,' which included me" sounds an alarm for the reader that a Granite Bay employee may have taken an adverse action against Ms. Moore because of her age.[6] Ms. Moore clarifies this signal in her rebuttal submission, in which (1) she opens by accuses Granite Bay of failing to act to remedy the "age discrimination" she had experienced in her workplace, (2) she repeatedly asserts that her supervisor gave her and the other "older" employees fewer and less advantageous hours than their "younger" counterparts, and (3) she notes that her supervisor's stated intention to remove all of the older workers from the residence had been realized in that all of the older employees were replaced by younger staff. Pl.'s Ex. 1

---

[5] Granite Bay argues that as in *Velazquez–Ortiz v. Vilsack*, 657 F.3d 64 (1st Cir. 2011), Ms. Moore has failed to exhaust her administrative remedies because, despite her passing mention of age discrimination, the basis of her Charge is retaliation. Mot. to Dismiss at 12 (ECF No. 7); Reply at 5 (ECF No. 11). *Velazquez* is inapposite. The *Velazquez* plaintiff referenced an earlier administrative charge as background for her claim that she had been retaliated against because of that earlier charge. *See* 657 F.3d at 68-69, 71. Here, through her Charge and her rebuttal Ms. Moore set out separate allegations of age-based discrimination and harassment. Likewise, while the plaintiff in *Velazquez* failed to "disabuse" the administrative agency of any possible misconception that her claim related only to retaliation, here Ms. Moore provided additional detail in her rebuttal regarding her harassment and discrimination claims. *See id.* at 72.

[6] In fact, while it does not impact my analysis, the record reflects that the investigator noted this red flag. The parties' administrative submissions included an email from the investigator to Granite Bay's counsel, which asks whether Granite Bay ever received or took action on an email from Ms. Moore that said her house manager was "trying to get rid of old people on the weekend." Pl.'s Ex. 2 at 7. And another document, titled "Investigator's Review Case Plan," includes (1) a field labelled "claims" next to which someone has hand-written "WB / Age??"; and (2) under the heading "Basis," a set of tick-boxes among which boxes labeled "Whistleblower" and "Retaliation" are clearly checked and the box titled "Age" is marked "?". Pl.'s Ex. 2 at 26-27.

at 14, 17-18, 28 (ECF No. 10-1). Taken together, these factual allegations suggest that Ms. Moore was subjected to disparate treatment because of her age. *See* 5 M.R.S. § 4572(1)(A) (rendering it unlawful for employers to discriminate against employees on the basis of age with respect to "tenure . . . terms, conditions or privileges of employment or any other matter directly or indirectly related to employment"); *Lustgarten v. Lowe's Home Centers, LLC*, No. 2:15-CV-289-NT, 2015 WL 7312442, at *2 (D. Me. Nov. 19, 2015) (plaintiffs may present an age discrimination claim under the MHRA by alleging that their employer took adverse action against them because of their age).

Ms. Moore's submissions also suggest an age-based hostile work environment claim. Granite Bay acknowledges that the Charge says Ms. Moore was "harassed" by her supervisor and that Ms. Moore's rebuttal repeatedly asserts that she was subjected to a "hostile environment" and "harassment," but it argues that Ms. Moore linked those conditions to retaliation and not to age. Reply at 3, 6 (ECF No. 11). I disagree. Ms. Moore states, for example, that

> the hostile environment that I endured started in early fall, and after the report to DHS, it hit a new crescendo. It was almost unbearable. . . . I can attest to the fact that the employee Ninette I. did make it very, very clear that DH's goal was to replace 'the older staff on the weekend. It was clear by her actions of how she spoke to and treated her older staff that it was her intent.

Pl.'s Ex. 1 at 20. This statement both indicates that Ms. Moore experienced harassment in the fall before she reported neglect to DHHS in December 2014, the conduct on which her whistleblower claims are based, and connects her allegations of harassment to her supervisor's alleged discriminatory attitude against older workers.

11

Taken together, Ms. Moore's submissions should have led the investigator to look into her allegation of harassment not only as it related to retaliation but also to age. Accordingly, Ms. Moore's age-based hostile work environment claim comes within the scope of her administrative complaint.

Granite Bay insists that under *Lattimore v. Polariod*, the investigator's finding that Ms. Moore "did not make a claim of age discrimination" is dispositive of whether her age-based claims could have arisen out of a reasonable investigation into her Charge. Reply at 5. Granite Bay gives undue weight to the *Lattimore* court's statement that its failure-to-exhaust finding was "buttressed" by an investigative report that "indicate[d] that, in fact, [the] investigation did not extend" to the plaintiff's alleged harassment by a coworker. 99 F.3d at 465. The First Circuit has subsequently clarified: "Though an investigation's failure to extend to a claim in question can 'buttress[ ]' a court's outside-the-scope finding, a claim that should have been investigated can still be deemed within the scope *regardless of whether it was actually investigated.*" *Swallow*, 46 F. App'x at 645 (emphasis added) (quoting *Lattimore*, 99 F.3d at 465; *Davis*, 251 F.3d at 233); *see also Powers v. Grinnell Corp.*, 915 F.2d 34, 39 n.4 (1st Cir. 1990) ("[I]t is not the scope of the actual investigation pursued that determines what complaint may be filed, but what [agency] investigation could reasonably be expected to grow from the original complaint.").[7]

---

[7] *Lattimore* is also distinguishable on its facts. In *Lattimore*, the plaintiff, a black man, made passing reference in his charge to the fact that a white employee had not "been harassed and fired as I have been" for refusing to return to work during disability leave. *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 461 (1st Cir. 1996). In his subsequent complaint, the plaintiff asserted a claim for "racial

For the foregoing reasons, I find that Ms. Moore's submissions sufficed to raise her age-based claims before the MHRC. I therefore find those claims to be timely, and I DENY Granite Bay's motion to dismiss.[8]

## CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's motion to dismiss.

SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 18th day of July, 2018.

---

harassment" based on conduct that took place before he was injured and ceased working. *Id.* at 463. As the court explained, the allegations in the plaintiff's administrative charge "relate[d] solely to *employment* decisions made by [the defendant] *after* [the plaintiff's] March 16 injury and cannot reasonably be construed to include any *harassment . . . before* [the plaintiff's] injury." *Id.* at 464. Here, in contrast, Ms. Moore's FAC relates (albeit more clearly) the same events and claims set out in her Charge and her rebuttal. *Thornton v. United Parcel Service, Inc.*, on which Granite Bay also relies, is similarly inapposite. *See* 587 F.3d 27, 32-33 (1st Cir. 2009) (court would not expect a reasonable investigation of plaintiff's charge, which related "solely to UPS's alleged misunderstanding of his medical restrictions, resulting in a failure to accommodate his disability" to extend to "subsequent, discrete events, actions, and medical restrictions" referenced in the plaintiff's complaint).

[8] My findings relate solely to the question of whether Ms. Moore's age discrimination claims fell within the scope of her administrative charge for the purpose of determining the appropriate limitations period. I take no position on the strength of Ms. Moore's claims.